# United States District Court
# IN THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Kevin Haydel, | ) | |
| 1515 Rio Grande Drive, # 607 | ) | Case No. 1 :05-cv-02405 RJL |
| Plano, Texas 75075 | ) | |
| 214-453-5354 | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United States | ) | |
|       Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff(s) object(s) to and move(s) to strike/deny defendants' motion to dismiss. Counsel's motion is a substantive and procedural nullity, is frivolous on its face, and is interposed for the sole purpose of delaying this litigation and increasing the cost and expense of this litigation.

Counsels attempt to avoid subject matter and personal jurisdiction by misrepresenting that service was improper and that plaintiff(s) have not exhausted administrative remedies is unwarranted by existing law, and fails to

present a good faith basis for extension, modification or reversal of existing law.

Sanctions under Fed. R. Civ. P. 11(b) should be imposed.

## IMPROPER SERVICE

Counsel confuses Fed. R. Civ. P. 4(c) with the Rule under which service was effected:

Fed. R. Civ. P. 4(i), "SERVING THE UNITED STATES, ITS AGENCIES, CORPORATIONS, OFFICERS, OR EMPLOYEES."

Notwithstanding the language of Fed. R. Civ. P. 4(c)(2), Fed. R. Civ. P. 4(i)    states:

> (1)    Service upon the United States shall be effected (A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court or by sending a copy of the summons and of the complaint by registered or certified mail addressed to the civil process clerk at the office of the United States attorney and (B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General...

While counsel appears to be arguing that service under Fed. R. Civ. P. 4(i)(1)(A) should require that someone other than the Plaintiff to effect service, counsel overlooks the alternative method, signified by, "or" and continuing "by sending a copy of the summons and of the complaint by registered or certified mail...".

Counsel presents no authority which prevents plaintiff(s) from certifying that plaintiff placed the summons and complaint in the mail as required by Fed. R. Civ. P. 4(i)(1)(A).  Counsel also alleges that plaintiff(s) did not serve the

Internal Revenue Service. This is a clear misrepresentation of this matter as the Internal Revenue Service is not named as a party to this matter and thus plaintiff is not required to serve the Internal Revenue Service.

Counsel then seeks to "sneak in" through his/her "Memo" several other bases for dismissal that are not relevant to his/her Motion to Dismiss re: Insufficiency of Service.

## ADMINISTRATIVE REMEDIES

This Court has recognized that an exception to the exhaustion of the administrative remedy is found where "An adverse decision can also be certain if an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider." Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 105 (D.C. Cir. 1986) (citing Etelson v. Office of Pers. Mgmt., 684 F.2d 918, 925 (D.C. Cir. 1982).

Defendants' agency has sent numerous correspondence to plaintiff(s) which establish without question that the agency (IRS) has articulated a very clear position on the issues regarding its collection activity involving plaintiff(s) which it has demonstrated it is unwilling to reconsider.

To show that IRS "has articulated a very clear position on an issue which it has demonstrated it would be unwilling to reconsider", the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, states:

"(1)    Returning money wrongfully collected: This Policy Statement has
        been revoked."

Thus, even if IRS has collected unlawfully, and knows it, IRS Policy is to

refrain from returning amounts unlawfully collected.  There can be no clearer

articulation of the IRS position on returning money unlawfully collected and no

clearer demonstration that IRS is unwilling to reconsider; the Policy has been

revoked.

My Complaint, construed in the context of Service Policy P-5-36, should

be sufficient to establish that IRS "has articulated a very clear position on the

issue which it has demonstrated it would be unwilling to reconsider."  The

exception is appropriate.


## OTHER OCCULT BASES FOR DISMISSAL

As to counsel's other occult bases for dismissal, including counsel's

attempt to dismiss a refund suit neither intended, nor filed, all are addressed

below.

To the point that IRS "has articulated a very clear position on the issue

which it has demonstrated it would be unwilling to reconsider", the history of IRC

section 7433 shows that one case cited, Venen, was correctly decided under

TBOR I's express proscription.  The current regulation, upon which McGuirl was

decided, and upon which the instant case hinges, is an unreasonable

interpretation of the current statutory provision; exceeds the authority of the

current statutory provision by impermissibly extending the operation of the

exhaustion requirement; and, by frustrating Congress' intent in creating, and

amending, 7433; and by effectively converting a "7433 damages" claim into a

"7422 refund" claim. (Another of counsel's occult bases)( thus demonstrating

again that the IRS "has articulated a very clear position on the issue which it has

demonstrated it would be unwilling to reconsider".)

## HISTORY OF 7433 Taxpayer Bill of Rights (TBOR I)

Congress inserted 7433 into the Internal Revenue Code in the Taxpayer

Bill of Rights. Although Plaintiff has been unable to find the actual Act of

Congress, a comprehensive discussion was published by the American Bar

Association:

> "Section 7433 also removes tax collection controversies between
> taxpayers and the IRS from the jurisdiction of federal courts and places
> them in the IRS administrative bureaucracy. Section 7433(d) requires
> taxpayers to exhaust their administrative remedies before filing section
> 7433 actions in district court. In 1996, the Taxpayer Bill of Rights 2
> (TBOR 2) eliminated the exhaustion requirement, permitting district courts
> to hear section 7433 claims provided that damage awards are reduced
> when the claimant does not exhaust administrative remedies."

The Bar is correct regarding the 1996 amendment.

## HISTORY OF 7433 TAXPAYER BILL OF RIGHTS II (TBOR II)

PUBLIC LAW 104-168 (JULY 30, 1996) 110 STAT. 1453, entitled "An Act

To amend the Internal Revenue Code of 1986 to provide for increased taxpayer

protections," TBOR II's Title VIII, SEC. 802 amended Paragraph (1) of section

7433(d) to read:

"The amount of damages awarded under subsection (b) may be reduced if the court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

The Bar then opined that:

"However, Congress reinstated the exhaustion requirement in the 1998 Act."

The Bar is not precisely correct in this assertion. TBOR III, found in the IRS Restructuring and Reform Act of 1998, Pub. L 105-206 (RRA '98), struck a delicate balance between TBOR I's "absolutely not" provision and TBOR II's "judgment may be reduced" amendment. Section 7433, as re-amended by TBOR III, is silent with respect to bringing or maintaining a 7433 action. The revision states no more than "...no judgment shall be awarded..." unless the Court is satisfied that administrative remedies available have been exhausted. 7433, in its current incarnation, neither prohibits, nor precludes, equitable relief. To paraphrase the Bar, 7433 now permits "district courts to hear section 7433 claims provided that..." in the absence of the Court's satisfaction as to administrative exhaustion, "...no judgment shall be awarded...".

I respectfully direct the Court's attention to what the Bar had to say about the re-amendment:

"Congress should not have re-imposed the exhaustion provision. Many plaintiffs bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. These plaintiffs should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should

understand many people's distrust of the ability of the IRS to proceed with their claims…"

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" is but one of many reasons the Court should find the exception to exhaustion appropriate.  "[F]ew pro se plaintiffs have actual notice," because IRS refuses to give it.

Notwithstanding that Service Policy P-5-2(3) purports a "commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998", there is no IRS publication, publicly available, which notifies Citizens of the right to pursue damages under section 7433, let alone any reference to administrative procedures.  IRS by violating other Service policies "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" all of which have been made enforceable by section 1203(b) of RRA 98, the relevance of each of which is discussed immediately below the Service Policies listed.

With respect to Plaintiff(s), IRS has disregarded Service Policy P-1-1, (and thus "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider") Mission of the Service:

(1)     Mission of the Service: Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.

IRM 1.2.1.2.11

Despite Plaintiff(s) repeated efforts to gain an understanding of their responsibilities through examination of IRS records, defendant's agent has failed to comply with Service Policy.

IRS by disregarding Service Policy P-5-2 "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider"

(1)     COLLECTING PRINCIPLES: All our decisions about collecting must be guided by these principles. To the extent that they are, we will succeed in our mission.

(2)     SERVICE AND ASSISTANCE - All taxpayers are entitled to courteous, responsive, and effective service and assistance in all their dealings with the Service. We will actively assist taxpayers who try to comply with the law, and work to continually improve the quality of our systems and service to meet the needs of our customers. All taxpayers, whether delinquent or fully compliant, are entitled to prompt and professional service whenever they deal with Service employees.

(3)     TAXPAYER RIGHTS - We will observe taxpayers' rights, including their rights to privacy and to fair and courteous treatment. This affirms our commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998. Taxpayers will be protected from unauthorized disclosure of information.

(4)     COMPLIANCE - The public trust requires us to ensure that all taxpayers promptly file their returns and pay the proper amount of tax, regardless of the amount owed: The public as a whole is our customer, not just delinquent taxpayers. Our customers expect us to promote voluntary compliance by ensuring that all promptly pay their fair share. Employees should work with taxpayers to meet all their filing and paying requirements, not only the delinquency at hand. This involves identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.

(5)    CASE RESOLUTION - While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency.  To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed: All taxpayers are required to pay by the due date of the return.  From a broad range of collecting tools, employees will select the one(s) most appropriate for each case.  Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective compliance program.  When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

IRM 1.2.1.5.2

By failing to assist Plaintiff(s) in our attempts to comply with the law,

defendant's agent has failed to comply with Service Policy.

IRS by disregarding Service Policy P-5-16 ("has articulated a very clear

position on the issue which it has demonstrated it would be unwilling to

reconsider")

(1)    Forbearance when reasonable doubt exists that assessment is correct: Whenever a taxpayer raises a question or presents information creating reasonable doubt as to the correctness or validity of an assessment, reasonable forbearance will be exercised with respect to collection provided (1) adjustment of the taxpayer's claim is within control of the Service, and (2) the interests of the Government will not be jeopardized.

IRM 1.2.1.5.3

Despite Plaintiff(s) repeated efforts to verify any claim of obligation

through examination of IRS assessment records, defendant's agent has ("has

articulated a very clear position on the issue which it has demonstrated it would

be unwilling to reconsider") by failing to comply with Service Policy.

IRS has disregarded Service Policy P-5-34

(1)    Collection enforced through seizure and sale of the assets occurs
       only after thorough consideration of all factors and of alternative
       collection methods: The facts of a case and alternative collection
       methods must be thoroughly considered before determining seizure
       of personal or business assets is appropriate. Taxpayer rights
       must be respected. The taxpayer's plan to resolve past due taxes
       while staying current with all future taxes will be considered.
       Opposing considerations must be carefully weighed, and the official
       responsible for making the decision to seize must be satisfied that
       other efforts have been made to collect the delinquent taxes without
       seizing. Alternatives to seizure and sale action may include an
       installment agreement, offer in compromise, notice of levy, or lien
       foreclosure. Seizure action is usually the last option in the
       collection process.

(2)    All seizures will be approved by the Chief, Collection Division, with
       other specific seizures also requiring District Director, Assistant
       District Director, or Counsel approval, or court order.
                                                              IRM 1.2.1.5.7

IRS by disregarding Service Policy P-5-47 "has articulated a very clear

position on the issue which it has demonstrated it would be unwilling to

reconsider:"

(1)    Notices of lien generally filed only after taxpayer is contacted in
       person, by telephone or by notice: *** All pertinent facts must be
       carefully considered as the filing of the notice of lien may adversely
       affect the taxpayer's ability to pay and thereby hamper or retard the
       collection process.

(2)    *****.

(3)    Other notice of lien filing requirements: A notice of lien must be
       filed:

       1.    prior to instituting levy action on property in possession of
             the taxpayer; and

       2.    prior to service of final demand for payment if there is
             reasonable probability that suit may later be instituted.
                                                              IRM 1.2.1.5.13

By issuing a Notice of Levy prior to filing a notice of lien, defendant's agent has "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by failing to comply with Service Policy.

IRS has disregarded Service Policy P-6-20:

(1)    Information provided taxpayers on the application of the tax law: The Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.

(2)    Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and taxpayer publications.

IRM 1.2.1.6.7

By refusing Plaintiff(s) requests for comprehensive, accurate, and timely information on the requirements of tax law and regulations, defendant's agent has failed to comply with Service Policy.

IRS by disregarding Service Policy P-6-21 "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider:"

(1)    Educational programs provided: The Service will conduct taxpayer education programs for taxpayers whose needs for tax information are most effectively met by these means.

(2)    These educational programs will include those established to assist individuals in meeting their current and future tax obligations, as well as programs designed to instruct groups of taxpayers or prospective taxpayers on their rights and responsibilities under the tax law or on specific tax provisions of common interest.

IRM 1.2.1.6.8

By failing to instruct groups of taxpayers or prospective taxpayers on rights and responsibilities under the tax law or on specific tax provisions,

defendant's agent has "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider:" by failing to comply with Service Policy.

IRS by disregarding Service Policy P-10-42 "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider:"

(1)    All bona fide complaints or allegations will be investigated: An investigation will be made of all bona fide complaints or allegations of misconduct or irregularities concerning Service officials or employees and in certain instances investigations may be made of non-Service personnel when their actions may affect the integrity of the Service.

IRM 1.2.1.10.4

By refusing to investigate Plaintiff(s) complaints or allegations of misconduct or irregularities, defendant's agent has "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider:" by failing to comply with Service Policy.


## EXHAUSTION / AVAILABLITY OF REMEDY

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS failed to amend the regulation to reflect Congress' intent at all.

It is clear, however, that the current regulation, as amended by T.D. 9050, 68 FR 14320, was not promulgated until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's administrative exhaustion requirement. IRS intends not to be sued.

## THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit. This half-year waiting period is extreme. In the context for which the provision was created, this is tantamount to a complete frustration of Congress' intent. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate.

SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

## THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: Reiter v Sonotone Corp., 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the

legislative purpose is expressed by the ordinary meaning of the words used.
Richards v United States, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962).
7433's current language must ordinarily be regarded as conclusive, Consumer
Product Safety Comm'n v GTE Sylvania, Inc., 447 US 102, 108, 64 L Ed 2d 766,
100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its
intentions are contrary to the words it employed in the statute, this is the ending
point of interpretation.  Fuller v. United States, 615 F. Supp. 1054 (D.C. Cal
1985; quoting Richards v. United States, supra.

7433's current language merely restricts an award of damages unless the
Court is satisfied that administrative remedies, shown by Service Policy P-5-36,
above, to be essentially unavailable absent judicial intervention, have been
exhausted.

Yet the regulation quoted by the Court states that " … no suit may be
maintained … " in the absence of administrative exhaustion.  This is the
language that Congress expressly removed from 7433 in TBOR II; that more
restrictive language was omitted from the TBOR III re-amendment restricting
award of judgment.  It must be assumed that Congress, in omitting TBOR I's
more restrictive language from TBOR III's re-amendment, intended that omission.

As stated by the Supreme Court in Morton v. Ruiz, 415 U.S. 199 (1974):
"The agency power to make rules that affect substantial individual rights and
obligations carries with it the responsibility not only to remain consistent with the
governing legislation, FMC v. Seatrain Lines, Inc., 411 U.S. 726 (1973); Dixon v.
United States, 381 U.S. 68, 74 (1965); Brannan v. Stark, 342 U.S. 451 (1952),

but also to employ procedures that conform to the law. See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969) (plurality opinion). Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), quoted in Adamo Wrecking Co. v. United States, 434 U.S. 275, 287 n. 5 (1978), and cited in SEC v. Sloan, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." SEC v. Sloan, 436 U.S. 103, 117-118."

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness ... in its consideration" (Sloan). In 301.7433-1's subsection (a), paragraph (1), "reckless or intentional actions" is changed; one must have " ... damages sustained as a proximate result of the reckless or international actions..." (emphasis added).

To the extent that Treasury Decision 9050 "re-imposes" the more restrictive language of TBOR I, the regulation exceeds the authority of 7433 in its current form. To the extent that Treasury Decision 9050 re-imposes the prohibition of TBOR I, the regulation fails to remain consistent with the governing legislation; and fails "all those factors which give it power to persuade."

## REGULATION CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, the threshold issue of whether an assessment has been properly made is raised.  If IRS refuses to investigate that threshold issue, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff(s) right to challenge the existence of the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted.

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions.  National Labor Relations Board v. Brown, 380 U.S. 278, 291-292. The Court certainly need not give great consideration to an untimely and invalid argument for dismissal[1].

## THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and RRA '98 are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision.

---

[1] Defendant's failure to comply with the Court's Order to Answer addresses all bases for dismissal other than insufficiency of service, which is based upon counsel's confusion of Rule 4 (c)(2)'s requirement with Rule 4(i)'s requirement.

Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code … ".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole under section 7433, albeit with a prior administrative review. Once again, the key is availability of the administrative remedy. Availability can be likened to adequacy. As a matter of broad administrative law, if administrative remedy is inadequate, it need not be pursued.

> The Morton Court supra, opined, at 235:

> Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, available in form, is unavailable in substance.

## **CLEAN HANDS DOCTRINE**

As an example of IRS' unclean hands, Plaintiff(s) provide this excerpt from the NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS EXECUTIVE SUMMARY:

## THE MOST SERIOUS PROBLEMS ENCOUNTERED BY TAXPAYERS

6.    Levies on Social Security Payments.  In general, recipients of Social Security benefits are elderly or disabled workers, or the surviving dependents of deceased workers.  The IRS continues to process levies on Social Security payments without sufficient managerial review, causing undue burden on a vulnerable population of taxpayers.  The National Taxpayer Advocate urges the IRS to implement safeguards that would prevent levies from being imposed on Social Security payments to low income and other at-risk taxpayers.

7.    Appeals Campus Centralization.  The IRS Office of Appeals ("Appeals") has centralized its work on certain types of cases at six IRS campuses; these cases previously were resolved in field offices closer to taxpayers.  Appeals campus centralization is aimed at decreasing the time it takes for a taxpayer to resolve a case. While this aim is appropriate and admirable, the National Taxpayer Advocate is concerned that centralizing Appeals case resolution may actually increase taxpayer burden.  Centralization may reduce opportunities for taxpayers to have their cases resolved at the local level, diminish working relationships between taxpayers and Appeals employees, increase emphasis on processing at the expense of independent judgment, and diminish service for low income and unrepresented taxpayers.  The National Taxpayer Advocate urges Appeals to alleviate these problems and protect taxpayers' appeal rights by developing specific training that will help employees carry out Appeals' independent mission in the campus environment.  We recommend that Appeals monitor campus activity to ensure that taxpayers - particularly low income taxpayers - receive full and fair consideration of their cases and are adequately notified of their right to request a case transfer to a local Appeals office.

11.   Automated Collection System Levy Releases. Collection efforts through the IRS's Automated Collection System (ACS) can result in levies of bank accounts, wages, or other income such as Social Security.  In response to these levies, taxpayers will contact the IRS seeking to enter into a collection alternative, such as an installment agreement.  The IRS can also designate an account as "currently not collectible" if the taxpayer can demonstrate a financial hardship.  The Internal Revenue Code and Treasury Regulations require that the IRS promptly release levies when taxpayers enter into installment agreements or when they demonstrate the existence of a hardship.  Some taxpayers encounter problems with the levy release, including clerical errors, delays that result in

additional levies on taxpayer assets or income, or the IRS not returning levy proceeds when a delayed levy release results in additional levies. Delays are also due in part to taxpayers' failure to request expedited levy releases so that the release can be faxed to the third party levy source. The IRS has improved the levy release process for currently-not collectible accounts and has agreed to consider similar system changes for installment agreements, and require additional training for employees. We encourage the IRS to consider revising its procedures so that all levy releases are assumed to require expedited procedures.

15.    Mandatory Briefings for IRS Employees on TAS. Internal Revenue Code §7803(c)(2)(C)(ii) requires the National Taxpayer Advocate to develop guidance for all IRS officers and employees, outlining the criteria for referral of cases to the Taxpayer Advocate Service (TAS). The IRS has denied the request of the National Taxpayer Advocate to include TAS training among its annual mandatory briefings for all employees. Instead, the IRS has agreed to provide TAS training to contact employees in the Wage and Investment and Small Business/Self-Employed operating divisions on a one-time basis, and urges TAS to train the rest of the employees through methods such as the IRS intranet, inserts in employee Earnings & Leave statements, and "wallet cards." The National Taxpayer Advocate urges the IRS to rethink its position and grant her request to make TAS training mandatory for all employees.

Based upon the foregoing opinion of the National Taxpayer Advocate, and the admitted allegations in Plaintiff(s) Complaint, IRS, and the Principal for which it operates, comes with unclean hands, and the United States should not now be allowed to invoke administrative provisions to preclude having to answer for IRS' willful disregard.

## ADMITTED ALLEGATIONS PROVIDE MORE EVIDENCE

## OF UNCLEAN HANDS

Among the allegations admitted by defendant's failure to deny/motion to dismiss is that no proper assessment has been made for any year in question,

i.e., that no document signed by a duly appointed Assessment Officer exists. On

the basis of information contained in the Internal Revenue Manual, Plaintiff(s)

has/have identified this document as a Form 23C. As discussed in the defendant

in March v. Internal Revenue Service – 335 F.3d 1186 (2003):

> "[R]egardless of the form used, the IRS must comply with the regulations
> governing the assessment process. The purpose of these regulations is
> to ensure both the efficiency and the accuracy of the assessment process.
> The signature requirement in 26 C.F.R. § 301.6203-1 appears to serve
> multiple purposes. The requirement ensures that an assessment officer
> reviews the assessment before it is sent to the taxpayer, and the placing
> of the officer's signature establishes an effective date of the assessment
> that is relevant for certain timing requirements.

In discussing how IRS circumvents the legal requirement, the March Court

said:

> "In reality, the courts have created a legal fiction in which the submission
> of Form 4340, which lists a "23C Date," creates a presumption that a Form
> 23C was signed. While the courts have said that this presumption is
> rebuttable by the taxpayer, the IRS concedes that "when the Debtors
> argue that the 23C Forms were Never produced, it is because they
> probably do not physically exist." Aple. Br. at 15 n.2. In other words, the
> IRS gets the benefit of a presumption that they admit is likely false."

The Court will take Judicial Notice that the Form 4340 "which lists a '23C

Date,'" (sic) certifies only that IRS computer records reflect certain data; it does

not certify the accuracy of that data. In order to be admissible in evidence, the

accuracy of the data must be ascertained, and the defendant's counsel knows

this. (See: Brief on Admissibility of Computer Evidence, attached.)

Lastly, counsel for the United States is well aware that "[U]nder the

Administrative Procedure Act, 5 U.S.C. 704, a person aggrieved by an agency

action can seek judicial review of the action without exhausting an available

administrative appeal, unless the agency's regulations provide both (1) that the

administrative appeal must be taken, and (2) that during the pendency of the administrative appeal the agency action shall be inoperative. " Darby v. Cisneros, 509 U.S. 137 (1993), quoted in the U.S. Attorney's Manual, Civil Resource Manual, Title 4.

The filing of an administrative claim under regulation 301.7433-1 fails to meet the second prong of 5 U.S.C. 704, as recognized in Darby, and as counsel well knows.

## SUMMARY

The right to file a civil suit for damages was intended to protect taxpayers from an out of control agency.  The administrative remedies provision was intended to facilitate that right.  Paraphrasing Pacific Tel. & Tel. Co. v. Public Util. Comm'n, 443 U.S. 1301 (1979):

> Here, the administrative action [the regulation] was the source of the claimed wrong, not a possible avenue for its redress.

Wherefore, plaintiff(s) request(s) that the Court strike/deny defendants' motion to dismiss.

Respectfully Submitted,

Dated April 14, 2006

Kevin Haydel
1515 Rio Grande Drive, # 607
Plano, Texas 75075
214-453-5354

# CERTIFICATE OF SERVICE

Petitioner hereby states that a true and correct copy of "PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION TO DISMISS", was placed in the
postal mail system, return receipt requested (7005 1160 0005 1088 6776),
and sent to the following address on April 14, 2006.


**United States Attorney, District of Columbia**
**Kenneth L. Wainstein,**
**555 4th Street, NW**
**Washington, District of Columbia 20530**


Dated: _April 14_, 2006

Kevin Haydel
**1515 Rio Grande Drive, # 607,**
**Plano, Texas 75075**
**214-453-5354**

# CERTIFICATE OF SERVICE

Petitioner hereby states that a true and correct copy of "PLAINTIFF'S

RESPONSE TO DEFENDANT'S MOTION TO DISMISS", was placed in the

postal mail system, return receipt requested (7005 1160 0005 1088 6783),

and sent to the following address on April 14, 2006.


United States Attorney General

Alberto Gonzales,

950 Pennsylvania Avenue

Washington, District of Columbia 20530


Dated: _April 14_ , 2006

Kevin Haydel

1515 Rio Grande Drive, # 607,

Plano, Texas 75075

214-453-5354

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS